UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LARRY GENE HEGGEM,

                        Plaintiff,

   v.

MONROE CORRECTIONAL COMPLEX, DR. LOREN, DR. JOSEPH LOPIN, and L. MANIGO-HEDT,

                        Defendants.

No. C11-5985 RBL/KLS

**REPORT AND RECOMMENDATION**
**Noted for: May 24, 2013**

Before the Court are Plaintiff's motion for summary judgment (ECF No. 123) and Defendants' motion for summary judgment (ECF No. 127). Defendants filed a response to Plaintiff's motion (ECF No. 126) and Plaintiff filed a response to Defendants' motion (ECF NO. 129). By Order dated March 26, 2013, this Court provided Plaintiff with a notice consistent with *Woods v. Carey,* 684 F.3d 934, 935, 940-41 (9th Cir. 2012), re-noted the motions, and provided Plaintiff an opportunity to submit additional briefing in response to the Defendants' motion. ECF No. 131. No additional briefing was filed.

Based on the Court's review of the motions, opposition, summary judgment evidence, and balance of the record, the Court concludes that Plaintiff's motion for summary judgment should be denied and Defendants' motion for summary judgment should be granted.

**BACKGROUND**

Plaintiff Larry Heggem filed this *pro se* civil rights action on November 30, 2011 alleging that he was denied appropriate medical care while incarcerated at the Washington Corrections Center (WCC) and Monroe Correctional Complex (MCC). ECF No. 5. At the time

REPORT AND RECOMMENDATION- 1

he filed his complaint, Mr. Heggem was housed in the Intensive Management Unit (IMU) at the MCC.  ECF No. 21-1, Exh. 1 (Declaration of Dr. Joseph Lopin).  Mr. Heggem is no longer in custody.  ECF No. 121.

## OBJECTIONS TO EVIDENCE

Mr. Heggem attaches the following in support of his motion for summary judgment:  (1) August 2011 photograph of Mr. Heggem taken on his arrival at WCC; (2) September 26, 2012 photograph of Mr. Heggem taken on his release; and (3) Sea Mar Community Health Center clinical summary of Mr. Heggem's medical appointment on December 10, 2012 for post-traumatic stress disorder and dysphagia and a list of ordered and active medications.  ECF No. 123 at 4-7.  Mr. Heggem submits the first photograph as proof that he was being giving methadone and was looking "fairly healthy, but tired."  He submits the second photograph as proof that on the day he was released, he looked "absolutely terrible.  They nearly medical manslaughtered him."  He submits the medical report as proof that after his release, a doctor evaluated "his ailments and injuries" and prescribed methadone and panic attack medications.  ECF No. 123 at 1-2.

Defendants object to the submission of the photographs because they are hearsay, have not been properly authenticated, and are not the best evidence because they are dark, indiscernible, and contain unidentified handwriting.  Defendants object to the medical report because it is not relevant to Mr. Heggem's claims in this case.  ECF No. 126 at 2-3.

"Unauthenticated documents cannot be considered in a motion for summary judgment," *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir.2011) [internal citation omitted].  However, evidence which could be made admissible at trial may be considered on summary judgment.  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir.2003).  Certainly, Mr. Heggem

REPORT AND RECOMMENDATION- 2

could testify at trial as to when and where the photographs were taken and he may provide his personal opinion as to the state of his health. However, the Court cannot consider the photographs as proof of the state of Mr. Heggem's health or unidentified and unverified handwriting. The December 10, 2012 medical report is not relevant to whether Defendants violated Mr. Heggem's Eighth Amendment rights by failing to provide him with appropriate medical care while he was incarcerated at WCC and/or MCC because it relates to medical conditions that are not at issue in Mr. Heggem's complaint.

## FACTS

**A.    Controverted Material Facts:**

Where the nonmoving party is *pro se*, a court must consider as evidence in opposition to summary judgment all contentions "offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the party appearing pro se] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (citation omitted), *cert. denied*, 546 U.S. 820, 126 S. Ct. 351, 163 L.Ed.2d 61 (2005).

Mr. Heggem alleges in his verified complaint that on August 23, 2011, Dr. Hedt took him off his narcotic pain and panic attack medications. Mr. Heggem states that these medications had previously been prescribed for him by his community doctor and when he was held at the Snohomish County Jail and Western State Hospital. ECF No. 5, p. 4. Mr. Heggem claims to suffer from impingements of his spinal cord, hernias, affects of prior stage four cancer, and bone marrow depletion. *Id.* He alleges that Dr. Hedt left him in constant acute pain which caused him to scream and become suicidal. He alleges that Defendants Loren and Lopin left him in pain and anguish by "backing up" Dr. Hedt's decisions. Mr. Heggem claims he has signs of brain and

REPORT AND RECOMMENDATION- 3

colon cancer and has had no follow-up in two years, that he is being denied milk thistle and liver flush for his late stage liver disease, and that he is dying. *Id.* Mr. Heggem supports his complaint with seventy-five (75) pages of attachments, consisting of offender complaints, grievances, and health services kites submitted from August 2011 through November 2011. *Id.*

**B.     Facts Relating to Plaintiff's Medical Care at WCC and MCC**

Mr. Heggem entered WCC on August 23, 2011, and was taken off of his narcotic pain medication upon arrival by the provider managing incoming inmate medications. ECF No. 127, Exhibit 1, Declaration of Laura Manigo-Hedt (WCC Physician Assistant), ¶ 7. While at WCC, Mr. Heggem was seen by medical staff once a week regarding his medical complaints. *Id.* at ¶ 6. Mr. Heggem's medical charts indicated that his cancer was in remission when he entered WCC in August 2011 and there were no objective signs that his cancer had returned. *Id.* Additionally, he did not show any objective signs of brain and/or colon cancer, his lab tests were normal for liver functions, his lymph nodes were evaluated and were normal, and his request for milk thistle was denied because it is not on WCC's formulary. *Id.* According to the magnetic resonance imaging (MRI) report dated December 14, 2007 and a neurosurgical consult dated January 29, 2008, Mr. Heggem has an impingement, disk herniation, and stenosis on his right side, but his complaints while at WCC were not consistent with these reports as his complaints concerned pain on the left side. *Id.*

In September 2011, Mr. Heggem was moved from WCC to MCC. ECF No. 127, Exhibit 1, Manigo-Hedt Decl., ¶ 4; Exhibit 2, Declaration of Dr. Joseph Lopin, ¶ 5. According to Dr. Lopin, a physician at MCC, Mr. Heggem kited or declared a medical emergency over one hundred (100) times during his incarceration. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 5. Mr. Heggem's medical records show that he complained of pain in his head, neck, sinus, throat,

REPORT AND RECOMMENDATION- 4

tooth, shoulder, arm, chest, heart stomach, liver, spleen, back, knee, foot, toe joint, and his overall body. *Id.* at ¶ 6. Mr. Heggem demanded a magnetic resonance imaging (MRI) test for most of his head, neck, shoulder, cervical spine, back, knees, feet, and toes. He also requested a computed tomography (CT) scan from "head to pelvis," and believed that he has cancer of the brain, skin, lymph nodes, spleen, pancreas, intestines, colon, liver, spine, and has "parasite spinal cancer." *Id.*

Mr. Heggem also complained of side effects from chemotherapy. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 6. However, Mr. Heggem was diagnosed with stage IV non-Hodgkin's lymphoma in 2004 and underwent successful chemotherapy in 2004-2005. *Id.* at ¶ 16. Mr. Heggem required serial monitoring to rule out a recurrence of his lymphoma and the tests administered were negative for recurrent cancer. Mr. Heggem also complained that he had mercury toxemia, lymphadenopathy of the neck, numbness in his face, hemorrhoids, skin lesions, hiatal hernia, bone disease, anemia, arthritis, toe cramps, and was underweight. *Id.* at ¶ 6.

Throughout Mr. Heggem's medical requests and/or complaints, he requested powerful pain medications, including methadone, oxycodone, and steroids. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 7. However, Mr. Heggem has a well-documented history of polysubstance abuse and addiction beginning with alcohol consumption at age 12, progressing to lysergic acid diethylamide (LSD) and marijuana at age 16, cocaine at age 18, heroin at age 25, and crack cocaine as recently as age 48. Due to this powerful history of polysubstance abuse, Dr. Lopin states that Mr. Heggem is an extremely difficult offender to manage medically. Furthermore, any prescription for narcotic pain medications must be approved by the Care Review Committee (CRC). *Id.*

REPORT AND RECOMMENDATION- 5

Dr. Lopin states that medical staff scheduled appointments and examined or attempted to examine Mr. Heggem during his entire incarceration but unfortunately, Mr. Heggem usually was disruptive, antagonistic, negative, and aggressive towards his medical providers during their attempts to treat him. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 8; Exhibit 3, Declaration of Kenneth Lauren, M.D., M.P.H. (MCC Facility Medical Director), ¶ 5. Additionally, medical staff at MCC believed Mr. Heggem was dangerous to examine and determined that he compromised the orderly operation of the MCC medical unit. *Id.*, Exhibit 2 at ¶ 8; Exhibit 3 at ¶ 5. According to the Offender Health Plan (OHP), "[w]hen an offender is disruptive, unruly, abusive, or uncooperative to the extent the behavior seriously impairs the Department's ability to furnish services to the offender population or when the behavior poses a threat to DOC staff, authorized health services may be discontinued unless the behavior is due to a treatable mental or medical illness." *Id.* at ¶ 8, Attachment A, Offender Health Plan.

Due to Mr. Heggem's difficult behavior, medical staff at MCC had Mr. Heggem write a "problem list" of all his medical issues. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 9, Attachment B. According to Dr. Lopin, all of Mr. Heggem's medical issues on his "problem list," including requests for pain medication, were thoroughly evaluated. *Id.* On October 5, 2011, a medical behavior plan was implemented as a solution for Mr. Heggem's proclivity to declare medical emergencies on a daily basis. *Id.* at ¶ 9, Attachment C; Exhibit 3, Lauren Decl., ¶¶ 5, 7. Mr. Heggem's "problem list" was incorporated into his medical behavior plan, and staff used his medical behavior plan when Mr. Heggem declared a medical emergency. *Id.*, Exhibit 2, Lopin Decl., ¶ 9.

Dr. Kenneth Lauren, MCC's Facility Medical Director, was responsible for implementing the medical behavior. ECF No. 127, Exhibit 3, Lauren Decl., ¶ 5. Dr. Lauren was not personally

REPORT AND RECOMMENDATION- 6

involved in Mr. Heggem's day-to-day medical care, but he did attempt to speak with Mr. Heggem about his medical complaints on occasion while he was inside his cell. Dr. Lauren states that the interactions were usually unproductive as Mr. Heggem was hostile and aggressive toward him. *Id.*, ¶ 6. Dr. Lauren also reviewed Mr. Heggem's medical chart during his review of Mr. Heggem's grievances concerning his medical care. *Id.* at ¶ 7.

On December 28, 2011, Mr. Heggem received a CT scan of his chest, abdomen, and pelvis. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 10. The CT scan results demonstrated a normal liver, gall bladder, and bladder ducts, and it did not indicate any problems with any other internal organ. *Id*. On February 1, 2012, Mr. Heggem's request for opioids to help with pain was presented to the CRC, and the CRC determined that opioids were not medically necessary. *Id.* at ¶ 11. Medical staff also presented Mr. Heggem's request for an MRI of his shoulder to the CRC on February 1, 2012 and the CRC determined that an MRI was not medically necessary. *Id.* at ¶ 12. Mr. Heggem's requests for milk thistle were denied because milk thistle is not an approved DOC Pharmacy formulary and it is not proven to be an effective therapy for liver disease. *Id.* at ¶ 13.

All tests administered to Mr. Heggem indicated that his liver does not show any signs of decomposition and a liver biopsy was unnecessary. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 14. Mr. Heggem was informed that he must pursue therapy for Hepatitis-C through MCC's Infection Control Team. *Id.* at ¶ 15. However, he would have to submit to an objective examination and appropriate testing before they can determine what, if any, treatment is necessary, including the need for a liver biopsy and Hepatitis-C viral load test. *Id.* at ¶ 15.

//

//

REPORT AND RECOMMENDATION- 7

## SUMMARY JUDGMENT STANDARD

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990). A court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v.*

REPORT AND RECOMMENDATION- 8

*San Francisco Unified School District*, 237 F.3d 1026, 1031 (9th Cir. 2001). This is true even when a party appears *pro se*. *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

**DISCUSSION**

**A.     Eighth Amendment**

To establish a constitutional violation under the Eighth Amendment due to inadequate medical care, a plaintiff must show "deliberate indifference" by prison officials to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). For an inmate to state a claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Estelle*, 429 U.S. at 106. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an 8th Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9.

In a case alleging an Eighth Amendment violation, "the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Hudson v. McMillian*, 503 U.S. 1, 5-6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992). Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

REPORT AND RECOMMENDATION- 9

A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). First, a "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35; *McGuckin*, 954 F.2d at 1059. "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059-60.

### (1)   Plaintiff's Motion for Summary Judgment

Mr. Heggem fails to provide any competent evidence that the Defendants violated his Eighth Amendment rights. He argues that Defendants were deliberately indifferent to his serious medical needs because they did not prescribe him narcotic pain medication although he had received similar medications before his incarceration. ECF No. 123, at 2. He also argues that his receipt of panic/anxiety medication after being released from custody is proof of the Defendants' deliberate indifference to his medical conditions while he was incarcerated. *Id.* The only evidence provided by Mr. Heggem in support of his motion are two photos and a clinical summary of information for a medical appointment occurring six weeks after being released from custody. *Id.* at 4-7. However, the evidence does not establish that Mr. Heggem had a serious medical need during his incarceration or that the Defendants knew of and disregarded an excessive risk to Mr. Heggem's health or engaged in a course of treatment that was medically

REPORT AND RECOMMENDATION- 10

unacceptable under the circumstances. Nothing submitted by Mr. Heggem in support of his motion indicates the Defendants failed to administer medically necessary care in response to Mr. Heggem's medical needs during his incarceration. Moreover, his conclusory arguments are not grounded in the evidence offered with his motion.

Accordingly, it is recommended that Plaintiff's motion for summary judgment (ECF No. 123) be denied.

**(2)    Defendants' Motion for Summary Judgment**

Defendants' summary judgment evidence shows that before Mr. Heggem entered WCC and MCC in 2011, he had a serious medical condition as he was diagnosed with stage IV non-Hodgkin's lymphoma in 2004. ECF No. 127, Exhibit 1, Manigo-Hedt Decl., ¶ 6; Exhibit 2 Lopin Decl., ¶ 16. However, Mr. Heggem successfully completed chemotherapy treatment in 2004 and 2005 and all subsequent tests were negative for recurrent cancer. *Id.* Exhibit 2, Lopin Decl., ¶ 16. Mr. Heggem presents no medically competent evidence to the contrary.

The uncontroverted summary judgment evidence reflects that Mr. Heggem was taken off narcotic pain medication when he arrived at WCC, that he was seen by medical staff once a week at WCC, and that his stated desire for narcotic pain medications were evaluated but found to be unsupported by objective medical evidence. ECF No. 127, Exhibit 1, Manigo-Hedt Decl., ¶¶ 6-8. It is also uncontroverted that Defendant Manigo-Hedt did not discontinue Mr. Heggem's narcotic pain medication and that the CRC must approve narcotic medications before they can be prescribed to an offender. *Id.*, ¶ 7.

The evidence reflects that WCC and MCC medical staff responded to the numerous kites and complaints submitted by Mr. Heggem. ECF No. 127, Exhibit 1, Manigo-Hedt Decl., ¶¶ 8-9; Exhibit 2, Lopin Decl., ¶ 8; Exhibit 3, ¶¶ 5-7. MCC medical staff created a "problem list" of all

REPORT AND RECOMMENDATION- 11

medical issues claimed by Mr. Heggem.  All medical issues on the list, including requests for pain medication, were evaluated.  *Id.*, Exhibit 2, Lopin Decl., ¶ 9, Attachment B (September 30, 2011, Larry Heggem Problem List); Exhibit 3, Lauren Decl., ¶¶ 5-7.  In addition, medical staff instituted a medical behavior plan in order to properly handle Mr. Heggem's numerous medical emergencies.  *Id.*, Exhibit 2, Lopin Decl., ¶ 9, Attachment C (Medical Behavior Plan).

In his "Dying Declaration", Mr. Heggem states that he is dying from late stage liver disease.  ECF No. 7, p. 4.  However, a December 28, 2011 CT scan of Mr. Heggem's chest, abdomen, and pelvis showed a normal liver (as well as normal gall bladder, bladder ducts, and other internal organs).  ECF No. 127, Exhibit 2 (Lopin), ¶ 10.  Specifically, the tests administered to Mr. Heggem all indicated that his liver did not show any signs of decomposition, and a request for a liver biopsy was medically unnecessary.  *Id.* at ¶ 14.  Mr. Heggem provides no medically competent evidence to the contrary.

The evidence also reflects that Mr. Heggem's requests for milk thistle were received but denied.  His medical tests indicated that his liver was not deteriorating.  In addition, milk thistle is not on the Department's formulary and it is not proven to be an effective therapy for liver disease. ECF No. 127, Exhibit 1, Manigo-Hedt Decl., ¶ 6; Exhibit 2, Lopin Decl., ¶¶ 13-14.  As to Mr. Heggem's claim that he is being refused treatment for Hepatitis C, Mr. Heggem was informed that he must pursue therapy for Hepatitis-C through MCC's Infection Control Team, but he would have to submit to an objective examination and appropriate testing before the team can determine what, if any, treatment is necessary, including the need for a liver biopsy and Hepatitis-C viral load test.  *Id.*, Exhibit 2, Lopin Decl., ¶ 15.

Medical staff also examined Mr. Heggem regarding his complaint of shoulder pain. ECF No. 127, Exhibit 2, Lopin Decl., ¶ 11.  Dr. Lopin states that although medical staff's physical

REPORT AND RECOMMENDATION- 12

examination and observation did not correlate with Mr. Heggem's claim of severe shoulder pain, Mr. Heggem's requests for opioids and an MRI were presented to the CRC. The CRC determined that neither request was medically necessary. *Id.* at ¶¶ 11-12.

Mr. Heggem provides no competent evidence, medical or otherwise, to support his claim that any of the defendants were deliberately indifferent to a serious medical need(s). Viewing the evidence in the light most favorable to Mr. Heggem, the Court concludes that Mr. Heggem's allegations are either unfounded or that they amount to nothing more than a difference in opinion regarding his desire to have specific medication and medical tests albeit these were determined by his medical care givers to be unnecessary or detrimental to his care. Mr. Heggem is clearly dissatisfied with his care. However, a plaintiff cannot succeed on the merits based on Defendants' negligence or his own general disagreement with the treatment he has received. *Estelle*, 429 U.S. at 106; *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.1988); *Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir.1996).

Based on the foregoing, the undersigned concludes that Mr. Heggem has failed to raise an issue of material fact regarding Defendants' medical treatment and recommends that Defendants' motion for summary judgment on Mr. Heggem's Eighth Amendment claims be granted.

**B.     Equal Protection**

Mr. Heggem asserts a Fourteenth Amendment Equal Protection violation in his summary judgment motion. ECF No. 123, at 2. This claim is not alleged in his complaint (ECF No. 5) nor does he present any facts or evidence in support of his summary judgment motion to show that he is entitled to relief under the Fourteenth Amendment.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

REPORT AND RECOMMENDATION- 13

essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (*citing Plyler v. Doe*, 457 U.S. 202, 216 (1982)). In making a valid claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles*, 250 F.3d 669 (9th Cir. 2001) (*citing Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998)). For equal protection purposes, prisoners are not a suspect class, nor are they entitled to identical treatment as other inmates simply because they are all inmates. *See Norvell v. Illin*ois, 373 U.S. 420 (1963); *Mayner v. Callahan*, 873 F.2d 1300, 1302 (9th Cir. 1989).

Mr. Heggem does not allege that he is part of a protected class nor does he establish that he was treated any differently in his medical treatment than any other inmate. ECF No. 5; ECF No. 123. Therefore, Mr. Heggem has failed to state a claim for a violation of the equal protection clause and his motion for summary judgment on this claim should be denied.

**C.     Qualified Immunity**

Defendants also argue that they are entitled to qualified immunity. ECF No 127, 11-12. Under the doctrine of qualified immunity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A civil rights plaintiff opposing a claim of qualified immunity must establish the existence of a constitutional violation, clearly established law to support the claim, and that no reasonable official could believe their conduct was lawful. *Pearson v. Callahan*, 555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

REPORT AND RECOMMENDATION- 14

As the Court has concluded that Mr. Heggem has failed to raise material issues of fact relating to his constitutional claims, it is not necessary to address the question of qualified immunity.

## CONCLUSION

Based on the foregoing, the undersigned recommends that Plaintiff's Motion for Summary Judgment (ECF No. 123) be **DENIED,** Defendants' Motion for Summary Judgment (ECF No. 127) be **GRANTED,** and Plaintiff's claims against Defendants **dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **May 24, 2013**, as noted in the caption.

**DATED** this   8th   day of May, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION- 15